IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARC GRANO, as personal representative of
The WRONGFUL DEATH ESTATE OF JONATHAN
ANDREW GARCIA, and a Next Friend to J.O.G., A.S.R.,
an.J.G., and Ar.J.G.

      Plaintiff,

v.                                       Cause No.

STATE OF NEW MEXICO,
GREGG MARCANTEL, New Mexico Secretary of Corrections,
DAVID JABLONSKI, New Mexico Secretary of Corrections,
CLARENCE OLIVAS, Deputy Warden of Penitentiary of New Mexico
BRIAN LUCERO, Corrections Officer,
FNU MARTINEZ, Corrections Officer,
CAPTAIN FNU BACA, Corrections Officer,
SGT FNU WELLS, Corrections Officer
JOHN DOES 1 through 5, employees, staff, agents of
Penitentiary of New Mexico,

      Defendant.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
## RESULTING IN WRONGFUL DEATH

Plaintiff Marc Grano, Personal Representative of the Wrongful Death Estate of Jonathan Andrew Garcia, by and through his attorney, Joseph M. Romero Law, LLC (Joseph M. Romero) for his complaint against Defendants alleges and states:

**PARTIES**

1. Plaintiff Marc Grano (hereinafter "Plaintiff") was appointed Personal Representative of the Wrongful Death Estate of Jonathan Andrew Garcia, deceased, on February 12, 2019, and is a resident of San Miguel County, New Mexico.

2. Prior to his death on February 20, 2017, Jonathan Andrew Garcia (hereinafter "Decedent") was an inmate at Penitentiary of New Mexico (hereinafter "PNM") in Santa Fe County, New Mexico, and, as such, was entitled to the protections offered by the Eighth Amendment to the United States Constitution.

3. At all times relevant to this Complaint, Defendant State of New Mexico, through the New Mexico Corrections Department ("NMCD") owned, operated and maintained PNM.

4. Defendant State of New Mexico has authorized NMCD to operate PNM in Santa Fe County, New Mexico.

5. At all times relevant to this Complaint, Defendant State of New Mexico employed Defendant Secretary of Corrections Gregg Marcantel and was at all times material to this Complaint a natural person employed by the State of New Mexico.

6. At all times relevant to this Complaint, Defendant Secretary of Corrections David Jablonski was the Secretary of Corrections for the State of New Mexico on the date of Decedent's death and was at all times material to this Complaint a natural person employed by the State of New Mexico.

7. Defendant Clarence Olivas, Warden of Penitentiary of New Mexico was at all times material to this Complaint a natural person employed by the State of New Mexico as a Deputy Warden of PNM.

8. Defendant Brian Lucero was a correctional officer employed by the Penitentiary of New Mexico and at all times material to this Complaint a natural person employed by the State of New Mexico.

9. Defendant FNU Martinez was a correctional officer employed by the Penitentiary of New Mexico and at all times material to this Complaint a natural person employed by the State of New Mexico.

10. Defendant FNU Baca was a correctional officer employed by the Penitentiary of New Mexico and at all times material to this Complaint a natural person employed by the State of New Mexico.

11. Defendant FNU Baca was a correctional officer employed by the Penitentiary of New Mexico and at all times material to this Complaint a natural person employed by the State of New Mexico.

12. John Does 1-5 were or are correctional officers employed by the Penitentiary of New Mexico and at all times material to this Complaint were natural persons employed by the State of New Mexico.

## JURISDICTION AND VENUE

13. All acts complained of herein occurred in Santa Fe County, State New Mexico.

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), and 42 U.S.C. § 1983.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

16. Decedent was an inmate in the custody of NMCD for several years prior to his death.

17. A short time before his death, Decedent was released on parole.

18. Decedent had only been released on parole for a short length of time before he was arrested and returned to the custody at PNM as a result of a parole violation.

19. On the days leading up to his death, Decedent was held at PNM in Santa Fe County, New Mexico.

20. Decedent had a severe and chronic heart condition that previously caused him to suffer a heart attack.

21. Decedent's medical history and the nature of his chronic heart condition was well documented by and known to NMCD as a result of medical treatment and evaluation he received over the course of years that Decedent was an inmate in the custody of NMCD.

22. Decedent's medical condition and NMCD's ability to properly treat Decedent was the subject and basis for several transfers to and from different NMCD facilities while Decedent was an inmate in the custody of NMCD prior to his death.

23. In the days leading up to his death, while he was an inmate at PNM, Decedent was experiencing severe symptoms related to his heart condition.

24. Upon information and belief, there were no medical doctors, nurses or other healthcare professionals available to evaluate and treat Decedent.

25. Upon information and belief, Decedent was not being provided with the medication prescribed to him for his heart condition on the days leading up to his death.

26. Upon information and belief, Decedent suffered for days before two NMCD staff members finally transported him to the Christus St. Vincent Regional Medical Center in Santa Fe, New Mexico.

27. When Decedent was finally transported, NMCD staff ordered him to exit the transport vehicle and walk in to the hospital on his own.

28. Decedent collapsed and died in the parking lot at Christus St. Vincent Regional Medical Center on February 20, 2017.

29. Defendant State of New Mexico, Defendant Gregg Marcantel, and Defendant David Jablonski failed to establish any standard of care for its own or its subcontractors' provision of medical healthcare services to PNM inmates, including Decedent.

30. Defendant State of New Mexico, Defendant Gregg Marcantel, and Defendant David Jablonski failed to properly oversee, monitor, supervise and manage its own and its subcontractors' operation of medical facilities and provision of medical services to PNM inmates, including Decedent.

31. Defendant State of New Mexico, Defendant Gregg Marcantel, and Defendant David Jablonski failed to take corrective action against its medical care subcontractors, despite clear knowledge of the negligent and reckless provision of medical health care by its subcontractors to PNM inmates, including Decedent.

32. Defendant State of New Mexico has a non-delegable duty to provide proper, necessary and competent medical health care for all inmates in the custody of NMCD.

33. NMCD is responsible, on behalf of the State of New Mexico, for the management and oversight of its correctional facilities, including PNM.

34. NMCD is responsible, on behalf of the State of New Mexico, for the provision of proper, necessary and competent medical care of NMCD inmates, including those at PNM and for Decedent. NMCD contracted with its subcontractors for the provision of medical health services to NMCD inmates, but remains responsible for constitutional violations resulting from its subcontractors' actions.

### COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST  1983  CLAIM AGAINST DEFENDANT BRIAN LUCERO, DEFENDANT CLARENCE OLIVAS, DEFENDAND FNU MARTINEZ, DEFENDANT FNU BACA, DEFENDANT FNU WELLS AND DEFENDANTS JOHN DOES 1-5

Plaintiff restates and re-alleges the allegations made in the preceding paragraphs of this Complaint as though each is fully set out herein.

35. At the time of his death, Jonathan Andrew Garcia was a prisoner facing a parole violation charge.

36. A prisoner is entitled to substantive due process rights under the Eighth Amendment, which rights entitle a prisoner to be free from cruel and unusual punishment. *See, e.g., Estate of Hocker v. Walsh,* 22 F.3d 995, 998 (10th Cir. 1994).

37. Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca and Defendant Wells's actions, to wit: their knowing and intentional refusal to provide Jonathan Andrew Garcia access to medical care and their intentional denial of critical, emergent, and required medical attention, with the knowledge that such actions could reasonably be expected to lead to the death of or serious injury to Jonathan Andrew Garcia, were deliberately indifferent to the needs and rights of Jonathan Andrew Garcia.

38. By the aforesaid conduct, Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5  violated Jonathan Andrew Garcia's right to humane conditions of confinement as guaranteed to him, a convicted prisoner, by the Eighth Amendment to the United States Constitution.

39. As a direct and proximate result of the actions of Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5 enumerated above, Jonathan Andrew Garcia sustained serious personal injuries which were the result of his tragic and untimely death.

6

40. As a direct and proximate result of the actions of Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5 enumerated above, Jonathan Andrew Garcia, died. In addition, his son J.O.G. and his daughter A.S.R. and his daughter An.J.G., and his Ar.J.G. lost the love, society, guidance and companionship she enjoyed with their father.

41. As a direct and proximate result of the actions of Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca and Defendant Wells enumerated above, Plaintiff is entitled to an award of monetary damages for the reasonable expense of funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; the lost earnings, the lost earning capacity and the value of the lost household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy, the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; and hedonic damages, or damages for the loss of value of Jonathan Andrew Garcia's life itself, all to Plaintiff's damage in an amount to be determined by the Court at trial.

42. As a direct and proximate result of the actions of Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5 enumerated above, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the Court at trial for the loss of society, guidance and companionship that J.O.G., A.S.R., an.J.G., and Ar.J.G. enjoyed with her father Jonathan Andrew Garcia.

43. Furthermore, Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5's actions were willful, malicious, sadistic, wanton, and perpetrated with reckless disregard for the rights and safety of Jonathan Andrew

Garcia. Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5 's actions shock the contemporary community conscience, giving rise to an award of punitive damages.

### COUNT II: 42 U.S.C. § 1983  CLAIM AGAINST NEW MEXICO
### (FAILURE TO TRAIN AND SUPERVISE AND PROTECT)

Plaintiff restates and re-alleges the allegations made in the preceding paragraphs of this Complaint as though each is fully set out herein.

44. Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski failed to train and/or failed to supervise Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca, Defendant Wells and/or Defendants John Doe 1-5 and the Correctional Officer Defendants regarding a pretrial detainee's right to humane conditions of confinement as guaranteed by the Eighth Amendment to the United States Constitution.  Said humane conditions include but are not limited to providing access to adequate and timely medical care for pretrial detainees suffering from serious medical conditions.

45. Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's failure to train and/or supervise its law enforcement and corrections officers can be inferred from the obviousness of the facts.

46. Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's failure to sufficiently train and/or supervise can further be inferred from continuous and well-documented failure by the state to provide reasonable medical care to incarcerated persons at PNM.

47. Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's actions, to wit: their failure to train and/or supervise its corrections officers with regard to a prisoner's right to humane conditions of confinement as guaranteed by the Eighth Amendment to the United States Constitution as well as the their failure to institute reasonable medical care

provisions with the knowledge that such actions could reasonably be expected to lead to death or serious injury to Jonathan Andrew Garcia, or any other pretrial detainee, were deliberately indifferent to the needs and rights of Jonathan Andrew Garcia and all other San Juan County pretrial detainees.

48. Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's failure to train and supervise Defendant Olivas, Defendant Lucero, Defendant Martinez, Defendant Baca and/or Defendants John Doe 1-5 acts and omissions in violation of Jonathan Andrew Garcia's right to humane conditions of confinement.

49. For the period complained of herein, NMCD, PNM and its subcontractors acting through their employees, agents, apparent agents, or contractors, who were acting within the course and scope of their employment, agency, apparent agency or contract, were deliberately indifferent in the care and services they provided to Decedent while he was an inmate and patient.

50. Defendants' deliberate indifference included but was not limited to:

   a. Refusing to provide adequate staff, adequately paid staff, and adequately trained staff at PNM to care for inmates such as Decedent, with the full knowledge that such inadequate staffing practices would place inmates such as Decedent at risk for injury or death;

   b. Choosing to hire, retain, and willfully failing to supervise staff at PNM, with the full knowledge that such practices would place inmates such as Decedent at risk for injury or death;

   c. Deliberately failing to provide and implement proper care plans that would adequately meet Decedent's needs;

   d. Deliberately failing to provide a safe environment;

   e. Deliberately failing to ensure that Decedent received adequate treatment and prescribed medication;

   f. Deliberately failing to have adequate and effective policies, procedures, staff and equipment to adequately evaluate and treat Decedent;

  g. Deliberately failing to have adequate and effective policies, procedures, staff and equipment to timely transfer Decedent to a proper health care facility given the lack of qualified healthcare professionals present at PNM in the days leading to Decedent's death;

  h. Deliberately failing to provide services to attain or maintain the highest practicable physical well-being of Decedent in accordance with a written plan of care;

  i. Deliberately failing to adequately evaluate, treat or transfer Decedent given his medical condition.

  j. Deliberately failing to have a physician or other healthcare professional that could adequately assess Decedent's condition and treat, or properly refer him for adequate treatment of his medical condition.

  k. Deliberately failing to evaluate, treat and manage Decedent's heart condition;

  l. Deliberately failing to provide Decedent with his prescribed medication;

  m. Deliberately failing to develop, employ and follow appropriate policies and procedures with regard to the assessment, treatment and management of Decedent's heart condition;

  n. Deliberately failing to create an appropriate treatment plan;

  o. Deliberately failing to implement an appropriate treatment plan;

  p. Deliberately failing to take the reasonable steps to acquire proper treatment of Decedent;

  q. Deliberately failing to refer Decedent to appropriate specialists in a timely manner;

  r. Deliberately failing to timely arrange for the treatment necessary to assess, evaluate and treat Decedent's heart condition;

  s. Failure to protect and preserve the health of Decedent.

51. Defendants subcontractors are bound by contract to obtain and maintain American Correctional Association (ACA) and National Commission on Correctional Health Care (NCCHC) accreditation under the terms of its contract with NMCD for the provision of proper, necessary and competent medical care of NMCD inmates

52. Defendants State of New Mexico, NMCD, PNM, Warden John Doe, Secretary of Corrections Gregg Marcantel and Secretary of Corrections David Jablonski have knowingly allowed, aided and abetted in its subcontractors's failure to obtain and maintain ACA and NCCHC accreditation, which in itself is evidence of Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's deliberate indifference toward Jonathan Andrew Garcia.

53. The ACA violations by Defendants include but are not limited to:

   a. ACA standard 4-4350 which provides for a mandatory written treatment plan that is required for offenders requiring close medical supervision including chronic and convalescent care.

   b. ACA standard 4-4350 which requires that that mandatory written treatment plan include directions to health care and other personnel regarding their roles in the care and supervision of the patient, and is to be approved by the appropriate licensed physician.

   c. ACA Standard 4-4348 requiring that offenders who need health care beyond the resources available in the facility as determined by the responsible physician, are transferred under appropriate security provisions to a facility where such care is on call or available 24 hours per day.

   d. ACA Standard 4-4348 which specifically states that treatment of an offender's condition should not be limited to resources and services available within a facility.

   e. ACA Mandatory Standard 4-4359 which further requires that with chronic conditions that the treatment plan address the monitoring of medications, laboratory testing, the use of chronic care clinics, health record forms, and specialist consultation and review.

54. As a direct and proximate result of the actions of Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's enumerated above, Jonathan Andrew Garcia sustained serious personal injuries which included his tragic and untimely death.

55. As a direct and proximate result of the actions of Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's enumerated above, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the Court at trial for the loss of

society, guidance and companionship that his J.O.G., A.S.R., An.J.G., and Ar.J.G. enjoyed with their father Jonathan Andrew Garcia.

56. As a direct and proximate result of the actions of Defendant State of New Mexico, Defendant Marcantel, and Defendant Jablonski's enumerated above, Plaintiff is entitled to an award of monetary damages for the reasonable expense of funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; the lost earnings, the lost earning capacity and the value of the lost household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy, the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; and hedonic damages, or damages for the loss of value of Jonathan Andrew Garcia's life itself, all to Plaintiff's damage in an amount to be determined by the Court at trial.

**WHEREFORE**, Plaintiff prays for judgment over and against all Defendants for compensatory and punitive damages, for pre- and post-judgment interest, for recovery of the costs of this suit, and such other relief as permitted by law against all Defendants as established by evidence at trial.

Respectfully Submitted:

By: /s/ Joseph M. Romero
Joseph M. Romero, Esq.
JOSEPH M. ROMERO LAW, LLC
*Attorney for Plaintiff*
P.O. Box 27579
Albuquerque, NM 87125-7579
Phone: (505) 433-1642
Fax:   (505) 214-5774
joe@romerolawnm.com