


February 4th, 2022

Anna C. Martinez
5901 Wyoming Boulevard North East
Suite 300
Albuquerque, NM 87109- 3873

Re: The wrongful death of Jonathan Andrew Garcia.
Grano vs State of New Mexico

**INTRODUCTION**

I have been asked to serve as an expert witness by plaintiff lawyers Anna Martinez and Joseph Romero. I have been asked to review records regarding Jonathan Garcia and opine on his care.

I am a board certified Cardiologist practicing full time in cardiovascular diseases in Ventura, CA. I take care of acute cardiac patients on a regular basis and adroit at treating acute chest pain and myocardial infarctions (heart attacks).

I have been the Chair of the Division of Cardiology at Community Memorial Hospital for over decade and am also the current chair of the Department of Medicine. I have been a reviewer for the Medical Board of California and have testified regarding the standard of care for a Cardiologist for the state of California during the Conrad Murray vs. State of California trial.

**ITEMS REVIEWED**

The Wrongful Death Complaint.
Mr. Garcia's medical records on the day that he died
The prison's disclosures.
Interrogatory Answer Nos. 7 and 8 by Marcella Garcia.
Death Certificate.
Medical investigation report and autopsy

**FACTS OF CASE**

Jonathan Garcia was a 30-year-old male with a prior history of coronary artery disease with myocardial infarctions (heart attacks) three times with stenting in the past. The medical authorities at the Los Lunas corrections facility told decedent that he needed a pacemaker and were in process of arranging that. Mr. Garcia took cardiac medications including aspirin 81mg, metoprolol 50mg twice a day, Lisinopril 2.5mg a day and simvastatin 20mg every evening. Mr. Garcia had been complaining of chest pain for a couple of days.




On 2/20/2017 at 6:07am, a dorm officer Smith was advised that Jonathan Garcia was having chest pains. At 6:11am, Mr. Garcia reported to MRU medical unit and nurse Lorella Turpin (RN) evaluated Mr. Garcia.

At 6:57am, a transport vehicle was ordered by Dr. Andrade. The medical transport security request stated that a medical-non-emergency/urgent Corrections Department vehicle to be used instead of Medical-Emergency Ambulance Transport. Lt. Ray was notified of transport request at that time. There is no documentation in Correctional Facility records of when chest pain started. There was no description of the type of pain or any associated symptoms. There were no documentation of vital signs or if or when taken. An EKG was performed and reported to provider (assuming Dr. Andrade). There is no documentation in chart of the actual electrocardiogram (EKG) tracing, nor the interpretation of EKG results nor what time was it performed. Aspirin and 3 nitroglycerins were given at unknown times. Again, the EKG itself is not in correctional facility records but the EKG from the correctional facility was in emergency room hospital records. EKG reveals atrial fibrillation with 1mm horizontal ST elevation in leads ii, iii, avf consistent with an acute inferior ST elevation infarction. There are some lateral ST elevation in leads V4-V6 suggestive of lateral involvement. No prior EKG is available. Vital signs are noted to be monitored but there is again no documentation of what the blood pressure, heart rate or respiratory rate were.

At 7:34am, Lt Ray was still working on transportation At 7:53am, Mr. Garcia was escorted to back work gate for departure. At 7:59am, transport departs to St Vincent's hospital. Transporters were Brian Lucero and Brian Wells

.

At 8:18am, Mr. Garcia collapses in St Vincent's Hospital parking lot. At approximately 8:27am, Brian Lucero calls and states that Mr. Garcia collapsed to ground and became unresponsive. Mr. Garcia stepped out of the vehicle and attempted to grab the back of a vehicle in the parking lot to keep from falling. Garcia then fell to ground and began shaking. Officer Brian Wells ran into hospital to get assistance. Officer Lucero began chest compressions. Eventually hospital personal arrived and rushed Mr. Garcia inside facility. At 8:29am, Mr. Garcia is taken to emergency room. At 8:53am, Mr. Garcia is pronounced death.

Emergency room records reflect that Mr. Garcia had been complaining of chest pain and was currently unresponsive with agonal respirations, pulseless and in ventricular fibrillation. Garcia was 5 ft 9 and 240lbs (BMI 35.6). Code Blue Records shows first record at 8:29am when intraosseous and intravenous lives were established. Narcan 2mg intramuscularly given. At 8:30am, 8:44am and 8:50am, one ampule of epinephrine was given. At 8:32am ventricular fibrillation (Vfib) was noted and 200 joules defibrillation (shock) was performed. 300mg of Amiodarone given at 8:37am. Vfib was still noted on monitor and 360 joules defibrillation performed at 8:38am and again at 8:43am and again at 8:47am. Cardiopulmonary resuscitation was continued and last shock converted Mr. Garcia from Vfib to pulseless electrical activity. Mr. Garcia was intubated with endotracheal tube. Code was called at 8:53 am and Mr. Garcia was pronounced dead.

In the New Mexico Correctional Department Critical Incident Debriefing, it is noted that an ambulance or other emergency transport unit could have been contacted to speed up the transport time. Plan for improvement to avoid another incident was to contact an official emergency transport unit to transport inmate to a medical facility.




**AUTOPSY AND INVESTIGATION**

Veena Singh MD performed the autopsy. Deputy Medical investigators were Wendy Honeyield and Lynne Gudes. Cause of death was acute myocardial infarction due to atherosclerotic and hypertensive cardiovascular disease. On autopsy, an acute and large thrombus (blood clot) with a severe stenosis (blockage) was noted in the proximal and mid right coronary artery of the heart. There was a prior mid metallic stent noted. There was evidence of fresh damage to the heart muscle from the blockage. There was also evidence of scarring from prior heart attacks. Mr. Garcia was noted to be 181cm and 109.6kg (BMI 33.45). Heart weighted 410gm with LV wall thickness at 1.5cm

**ANALYSIS**

Patients with possible ischemic symptoms should be transported to the hospital by ambulance because of there is a risk of cardiac arrest and death. Patients should be monitored and cared for by emergency medical technicians and paramedics who have experience with monitoring, myocardial infarctions, cardiac arrest and advanced cardiovascular life support (ACLS). One out of every 300 people with chest pain transported to the emergency department (ED) by private vehicle suffers cardiac arrest in route. It is always advised with acute chest pain to call 911. Mr. Garcia was not just complaining of chest pain but also was having an acute ST elevation myocardial infarction (heart attack consistent with a complete blockage of his right coronary artery, a major artery of the heart). This heightens his risk significantly beyond a person with chest pain. Ventricular arrhythmias are common early after onset of an ST elevation myocardial infarction (STEMI). Mr. Garcia clearly should have been transported by ambulance for multiple reasons but most importantly was for continual monitoring in a person having an active heart attack. It was dreadful that a physician would send Mr. Garcia with such a serious cardiac condition in a unmonitored setting of a transport vehicle without trained emergency personnel.

Mr. Garcia had known coronary disease and EKG with evidence of an acute ST elevation myocardial infarction (STEMI). There is significant importance for him to go to the hospital not just for monitoring but also he required immediate treatment with reperfusion therapy or revascularization of a completely blocked artery. A STEMI is usually caused by an acute blood clot or thrombus that causes a completely blocked artery and no blood flow to the area of the heart that blood vessel provides. This will cause damage or death to heart muscle cells (myocardial infarction). The heart needs electricity to pump and an acute decrease in blood flow can cause electrical confusion or an arrhythmia (abnormal heart rhythm) called ventricular tachycardia or ventricular fibrillation which are deadly.

Immediately when Mr. Garcia was having chest pain and EKG should have been performed within minutes. When noting an acute STEMI, this should have been treated as emergency. 911 should be called immediately and they will dispatch an ambulance emergently. When an ambulance team notes that there is a very abnormal EKG with a STEMI, the STEMI protocol is activated. This protocol alerts the cardiac catheterization team at the accepting hospital and the on call Cardiologist to prepare for the arrival of a STEMI patient. This team and doctor ready themselves and the Cath lab to take care of the patient acutely. The ambulance notifying the hospital saves precious time in a person with acute heart attack. When the patient arrives at hospital, a procedure called a cardiac catheterization (coronary angiogram) is performed to assess coronary arteries and location of blockage. An immediate intervention would then be performed with a balloon and stent to open the blockage. It is thus important to call and arrive at the ED by ambulance to save important time so the hospital can deliver earlier reperfusion therapy and stenting. The performance of prehospital ECGs by trained personnel is associated with shorter reperfusion times and lower mortality rates from STEMI. The use of prehospital




ECGs, particularly when coupled with communication of STEMI diagnosis and preferential transport to a PCI-capable hospital, has been shown to result in rapid reperfusion times and excellent clinical outcomes. It is estimated that almost 90% of patients presenting to a hospital with PCI (percutaneous intervention) capability and without a clinical reason for delay have a door to balloon (opening artery) of less than 90 minutes. A patient's total time with chest pain is essentially the total ischemic time (total time heart is not getting sufficient blood). The longer time with chest pain, the more damage there is to the heart and a higher risk of arrhythmia. Mr. Garcia should have had his STEMI recognized quickly and transported immediately by ambulance. He would have had then his artery stented in a timely fashion. If the Correctional Facility had not delayed Mr. Garcia's care, it is highly probable that Mr. Garcia would have never had his cardiac arrest and survived.

Ambulances also deliver patients directly to the emergency room (ER). It is shocking that transport personnel did not drop Mr. Garcia in ER entrance. Instead, they parked in parking lot and made a man having an active heart attack walk and exert himself! I'm not surprised that Mr. Garcia in the throughs of a STEMI and exertion went into a cardiac arrest. Mr. Garcia may have not had a cardiac arrest if he had been delivered directly to the emergency room and placed on a gurney with no exertion. If transport vehicle would have delivered Mr. Garcia to the Emergency room entrance instead of the parking lot, Mr. Garcia's chance of survival would have been much higher. Mr. Garcia was having a STEMI or an active heart attack due to a completely blocked artery. Walking made him undergo unnecessary stress and certainly increased his risk of sudden death. Because Mr. Garcia arrested in parking lot instead of emergency room, there was a significant delay in receiving cardiac advanced life support by trained staff instead of basic CPR by officer Lucero. This delay led to significant reduction in potential survival. There was at least an 11 minute delay in defibrillation because Mr. Garcia arrived in parking lot at 8:18, did not arrive into ER until 8:29am, and did not get shocked until 8:32am. Survival from VF specifically is inversely related to the time interval between its onset and termination, with the odds of survival decreasing 7% to 10% for each minute of delay from onset to defibrillation. Chances of survival were likely vanquished at this point. Patient's likelihood of survival from Vfib arrest are higher if a monitor/defibrillator can be applied quickly. Out-of-hospital cardiac arrest victims with initial Vfib who survive to hospital admission have a rate of survival to hospital discharge of 60% after early PCI. Had Mr. Garcia been dropped off in ER and had a cardiac arrest, his survival would have been significantly improved.

When patients have chest pain, it is important to take symptoms and complaints seriously especially in a person with prior known heart disease. Mr. Garcia had been complaining of chest pains prior to the morning of 2/20/17. Mr. Garcia should had been seen by medical personnel for evaluation for his chest pain sooner than the morning of 2/20/17. He would have then been sent for evaluation at the hospital and this STEMI and cardiac arrest would in high likelihood have been avoided.




**CONCLUSIONS**

**Mr. Jonathan Garcia was complaining of chest pain and was having an ST elevation myocardial infarction (STEMI) the morning of 2/20/17. This was an emergency. Mr. Garcia should have been immediately and without a delay transported by an ambulance to St. Vincent's ER.**

**There was a significant hold up in transporting Mr. Garcia to the ER. Had Mr. Garcia been sent immediately to the ER, it is highly probable that Mr. Garcia would have survived that day.**

**Mr. Garcia should have been transported via ambulance with ACLS trained staff bringing him directly to the ER instead of an unmonitored transport vehicle with untrained staff to the parking lot of the hospital. Mr. Garcia should not have been allowed to walk from the parking lot to the ER where he suffered an out of hospital Vfib cardiac arrest. If Mr. Garcia had been transported by ambulance, the STEMI protocol could have been activated and he would have been delivered quickly to the hospital and received the proper treatment for a STEMI including a cardiac angiogram with stenting. It is highly probable that Mr. Garcia would have survived.**

**Mr. Garcia was complaining of chest pain prior to his 2/20/17 STEMI. Addressing these symptoms and sending Mr. Garcia to ER prior to 2/20/17, would given Mr. Garcia a very high probability of survival.**

**I base my opinions on my education, training and 23 years as a practicing full time Cardiologist. I hold my opinions to a reasonable degree of medical probability based on current known data of case.**

**Alon Steinberg, MD FACC**

**References**

2013 ACCF/AHA Guideline for the Management of ST-Elevation Myocardial Infarction
https://www.nhrmc.org/~/media/files/nhrmc/2013-stemi-guidelines.pdf?la=en

2020 ACLS Guidelines
https://www.ahajournals.org/doi/10.1161/CIR.0000000000000916