# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARC GRANO as personal representative of the WRONGFUL DEATH ESTATE OF JONATHAN ANDREW GARCIA and a Next Friend to J.O.G., A.S.R., An.J.G and Ar.J.G**

**Plaintiff,**

**v.**                                                    **Case No. 1:20-cv-00147-PJK-KK**

**STATE OF NEW MEXICO, GREGG MARCANTEL, New Mexico Secretary of Corrections, DAVID JABLONSKI, New Mexico Secretary of Corrections, CLARENCE OLIVAS, Deputy Warden of Penitentiary of New Mexico, BRIAN LUCERO, Corrections Officer, FNU MARTINEZ, Corrections Officer, FNU BACA, Captain, Corrections Officer, FNU WELLS, Sergeant, Corrections Officer, and JOHN DOES 1 through 5, employees, staff, agents of Penitentiary of New Mexico,**

**Defendants.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, by and through undersigned counsel of record, for his Response to Defendants' Motion to Dismiss [Doc. 121] states as follows:

## INTRODUCTION

Defendants seek dismissal based upon the argument that some claims are barred by the Eleventh Amendment, but primarily based upon their argument that Plaintiff has not adequately alleged deliberate indifference on the part of Defendants, such that they are not entitled to qualified immunity. Contrary to Defendants' claims, Plaintiff's Complaint meets the requisite pleading

standards. While Plaintiff does seek leave to amend to incorporate prospective equitable relief claims against the State and several Defendants in their official capacity, Defendant's Motion to Dismiss should be denied with or without granting leave to amend. The claims in the Complaint against the named Defendants are brought in their individual capacities, are plausible, and demonstrate a violation of Jonathan Garcia's Constitutionally-protected rights that is not subject to dismissal under the doctrine of qualified immunity.

**Standard of Review**

A motion to dismiss can be granted only when "it appears beyond a doubt" that a plaintiff fails to state any claim upon which relief may be granted. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "In deciding a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). "The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). *See also Corder v. Lewis Palmer Sch. Dist*. No. 38, 566 F.3d 1219, 1223-1224 (10th Cir. 2009) (*citing Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007))). ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

A complaint does not require "detailed factual allegations," but the "plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations marks and bracket omitted). A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id*., 127 S.Ct. at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1965 (internal quotation marks omitted). "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atl Corp. v. Twombly*, 127 S.Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma ex rel. Department of Social Services*, 519 F.3d 1247, 1249 (10th Cir. 2008). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S.Ct.] at 1965, n. 3. *See Airborne Beepers &. Video, Inc. v. AT&T Mobility, L.L.C.*, 449 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The

Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1971, n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin." *Robbins v. Oklahoma*, 519 F.3d at 1248.

I.    **Money damages claims against the State of New Mexico are Barred by the Eleventh Amendment. Prospective, injunctive, and declaratory claims are not. Plaintiff requests leave to amend his Complaint.**

Defendants are correct that the Eleventh Amendment bars claims against the State of New Mexico unless the State consents to the suit. Eleventh Amendment immunity is waivable by consent. Having now raised the issue, the State is entitled to dismissal of the money damages sought in the civil rights claims made against it.

However, the "[t]he Eleventh Amendment does not prohibit a plaintiff from suing state officials in their official capacities for prospective injunctive relief." *Will v. Mich. Dep't of State Police*, 491 U.S. 58,71 (1989); *Ex parte Young*, 209 U.S. 123,159 (1908)). The Supreme Court has clearly held that even absolute immunity does not preclude claims for injunctive relief, nor does it preclude an award of attorney's fees under 42 USC § 1988. *Thompson v. Colorado*, 278 F.3d 1020, 1024 (10th Cir. 2001)(*citing Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.") The discovery to date—including the records that were lost or destroyed contrary to state law—makes it clear that Jonathan Garcia's death was the result of an ongoing failure to the well-being of inmates seriously. Plaintiff therefore moves to amend his Complaint to add a declaratory count and an alternative injunctive count. *Exhibit 1*: proposed First Amended Complaint. [T]he *Ex parte Young* doctrine enables a plaintiff to circumvent the Eleventh Amendment. Under this doctrine, a suit against a state official in his official capacity seeking

prospective equitable relief is permitted, while a suit requesting retroactive relief is considered a suit against the state. *Fraizer v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001)(internal citations omitted). Even more recently, the Tenth Circuit noted that lower courts were instructed by the U.S. Supreme Court "definitively" that: "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Hill v. Kemp*, 478 F.3d 1236, 1257 (10th Cir. 2007)(*citing Verizon Md. v. Public Svc. Comm'n of Md*, 535 U.S. 635, 645 (2002) (quotation omitted). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Md*., 535 U.S. at 646.

## II.    Claims Against Individuals in the Original Complaint are not "Official Capacity" Claims. Claims Against Individuals in their Official Capacity in the Proposed Amended Complaint Seek Only Prospective Equitable Relief.

Defendants argue that "Plaintiff's claims against [certain] officials in their official capacity fail because the suit no different from a suit against the State itself," Mtn. at 3. Defendants continue that "Plaintiff's claims against the State of New Mexico and the state actors in their official capacity are unviable as a matter of law, and their dismissal is appropriate." Mtn. at 4. The claims made against the named Defendants are not claims against those Defendants in the official capacity. Nowhere in the Complaint are these Defendants sued in their "official capacity." In the Original Complaint, all named Defendants are sued in their own names for their own bad acts. Defendants are not entitled to dismissal because they want to describe Plaintiff's claims as other than they are. In the proposed First Amended Complaint, there *are* official capacity claims, but only prospective equitable claims therefor. The Eleventh Amendment does not shield a prison official or employee from suit in his or her individual capacity.

### III.    The Complaint meets the requisite pleading standard to state an Eighth Amendment Claim against Defendants

"Thirty years ago, the Supreme Court announced that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th. Cir. 2006)(*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A prisoner must have suffered 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Id.* "A deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Martinez v. Garden, 430 F.3d 1302, 1304 (10th. Cir. 2005) (internal citations omitted).

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The test for constitutional liability of prison officials involves both an objective and a subjective component. The prisoner must first produce objective evidence that the deprivation at issue was in fact sufficiently serious. We have said that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Moreover, a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong

handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th. Cir. 2005). (Internal citations omitted).

## IV.     The Individual Defendants are Not Entitled to Qualified Immunity.

### A.  Objective and Subjective Elements of a Deliberate Indifference Claim.

A claim for deliberate indifference to serious medical needs has both objective and subjective elements which have been clearly established from 1976 to the present. *See Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976); *Al-Turki*, 762 F.3d at 1192-93. It is clearly established that Jonathan Garcia's heart condition meets the objective element: medical conditions, like pregnancy or Jonathan Garcia's known heart condition always present a known need for care. *Havard v. Wayne County*, 436 Fed. Appx. 451, 454 (6th Cir. 2011)("In [the context of a pregnancy], the appropriate standard of care would include birth in a place equipped with the personnel and resources to handle pregnancy-related emergencies, such as those which arose in this case."). Thus, if a jail is "unequipped to handle the delivery of a baby," a pregnant inmate who shows signs of going into labor must be "rushed … to the hospital," *Id.* at 455. Likewise, if a jail is unequipped to handle a heart attack suffered by an inmate with a well-known heart condition, then the jail must make sure the inmate is "rushed … to the hospital." *Id.*   "The objective component is met if the deprivation is sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "In Mata, we explained that it is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely the symptoms presented at the time the prison employee has contact with the prisoner." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "We explained this settled state of the law in Oxendine: [T]o properly set forth an Eighth Amendment claim ... [the prisoner] must set forth facts demonstrating [1] that his alleged medical need, in this case the need for an outside medical specialist, was sufficiently serious to meet the objective

element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must [set forth] facts supporting an inference that Defendants knew about and disregarded a substantial risk of harm to his health or safety." *Mata v. Saiz*, 427 F.3d 745, 764 (10th Cir. 2005) (Baldock, J. dissenting).

"The Supreme Court has stated 'With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness.' *Farmer v. Brennan*, 511 U.S. at 836. For the purpose of Eighth Amendment analysis, the Tenth Circuit has equated deliberate indifference with recklessness. *See Belcher v. United States*, 216 F.App'x 821, 823-24 (10th Cir. 2007) (unpublished) (*quoting Smith v. Cummings*, 445 F.3d at 1258)." *Chavez v. Board of County Commissioners of Sierra County*, 899 F.Supp.2d 1163, 1180 (D.N.M. 2012).

"It is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may be a violation of the eighth amendment." *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001)(*quoting Ruark v. Drury*, 21 F.3d 213, 216 (8th Cir.)), *cert. denied*, 513 U.S. 813, 115 S.Ct. 66, 130 L.Ed.2d 23 (1994). The delay may rise to an actionable Eighth Amendment violation, when the information available to the prison official is such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) are so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate. *Id*.  In particular, courts have found that the elements of a claim for deliberate indifference to an inmate's serious medical needs were satisfied, and that the defense of qualified immunity did not apply, under the following circumstances: (1) Prisoner's § 1983 complaint alleged a factual basis sufficient to establish that corrections officials were deliberately

indifferent to his health, in violation of the Eighth Amendment, where prisoner alleged that a heart attack he suffered was caused by the inadequate treatment he received for his diabetes and hypertension, that he was denied insulin by a doctor for over a year even though it had been earlier prescribed for him, that certain medically recommended procedures were not performed, that he was denied proper diagnosis and treatment because of the lack of a primary care physician employed at the prison. These allegations did not reflect a mere disagreement with his medical treatment. *Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999); (2) correctional officers' failure to perform CPR during the ten minutes in which an inmate was having a heart attack, which is undeniably an objectively serious medical condition (even though it may not have been obvious to those present at the scene that his condition was life threatening) *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In their motion, Defendants present no argument or evidence to dispute that Jonathan Garcia had a serious heart condition or that Jonathan Garcia suffered not one, but two heart attacks while in custody—the first on February 10, 2017, or that his condition and its complications presented an objectively serious medical need. They can point to no law that denies the Wrongful Death Personal Representative the right to seek damages in this case. Thus, Defendants have failed to meet their initial responsibility defeating the objective element of a deliberate indifference claim that Plaintiff has failed to allege. *Kaur*, 263 F. Supp. 3d at 976-77.

**B.  The Role of "Gatekeeping" in Deliberate Indifference Cases.**

Defendants' motion also does not dispute that there are at least two distinct types of conduct which can support a deliberate indifference claim. The first type of conduct involves the actual provision of health-care services to a patient in custody and typically arises with respect to chronic conditions which can be treated during the course of the patient's stay within the facility where the

patient is held. *See, e.g., Petties*, 836 F.3d at 734. The second type of conduct involves situations in which the staff of the facility where a patient is held in custody are not equipped or qualified to diagnose or treat the patient's condition on-site and are thus limited to a "gatekeeper" role in deciding whether to send the patient off-site to receive care from personnel who are qualified and equipped to do so. The latter situation typically involves acute conditions requiring urgent or emergent care. *See, e.g., e*, 510 F.3d at 1328.

Jonathan Garcia's heart condition supports both of these types of deliberate-indifference claims. Prior to a full-blown heart attack, decedent may be able to receive some care within the facility in which hhe was held. But once he began to suffer a heart attack, his medical condition rapidly escalated to an emergency requiring immediate transport to a hospital.  While some of the medical "gatekeeper" cases involve medical personnel, many involved the corrections officers. The "gatekeeper" claim can apply to correctional personnel as well as medical personnel.  *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *Pool*, 418 F.3d at 945. It is indisputable that Defendants were neither qualified, equipped, or capable of dealing with an inmate suffering a heart attack. Consequently, Defendants were limited to a gatekeeper role. These facts relegate them to a gatekeeper role with respect to arranging care for Jonathan Garcia and take their conduct outside the scope of merely expressing a difference of opinion on a matter of professional judgment.

### C.  The Role of Professional Judgment in Deliberate Indifference Cases.

Regardless of whether Jonathan Garcia's heart condition is categorized under the first, second, or both of the types of conduct described above, the only element of a deliberate indifference claim which the Defendants identify as the basis for their motion is the subjective component. They contend that so long as Plaintiff does not claim that they did not directly admit they were subjectively aware of the actual condition of Jonathan Garcia's heart in the days and

hours before his death then they are entitled to dismissal of Plaintiff's deliberate indifference claims.

Deliberate indifference may be reasonably inferred when the person expressing an opposing opinion is not qualified to render it in the first place, or it is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal citations and quotation marks omitted); *see, e.g., Carr v. El Paso County*, 757 Fed. Appx. 651, 656 (10th Cir. 2018) (concluding that a medical provider's decision to take away a wheelchair, crutches, and medical boot from a pretrial detainee, thereby forcing him to hobble around the jail on a broken foot, supported a deliberate indifference claim). That is why even licensed health-care staff may be relegated from providers to mere gatekeepers when a patient's condition falls outside the scope of the care they are trained or equipped to provide. *Sealock*, 218 F.3d at 1211. Certainly, in this case the correctional officers who ignored Jonathan Garcia while he was having a second heart attack both failed in their role as gatekeepers and, consequently, fail in their request for dismissal based upon qualified immunity.

### D.  Methods of Proving the Subjective Element of Deliberate Indifference.

When viewed in the light most favorable to Plaintiffs, what little Defendants claim they did do with respect to Jonathan Garcia may also support a reasonable inference of deliberate indifference. Defendants knew—and turned a deliberately blind eye to the fact that Jonathan Garcia had a prior heart attack in their facility and was suffering from a second heart attack while they failed and refused to take him to a hospital. The facts alleged in the complaint are sufficient to demonstrate Defendants' subjective awareness of the need for emergency medical transport at that time of the second heart attack. *Sealock*, 218 F.3d at 1211. While Defendants may dispute it,

there complaint clearly and plausibly explains in the record that Defendants should have transported Jonathan Garcia to the hospital by ambulance well before they attempted to march him, shackled through the parking lot of the hospital.

In this regard, it is important to distinguish between subjective awareness of a *substantial risk of harm* and subjective awareness of a *particular result* of that risk. The subjective element of a deliberate indifference claim does not require "'knowledge of the particular manner in which injury might occur.'" *Layton v. Bd. of County Comm'rs of Okla. County*, 512 Fed. Appx. 861, 869 (10th Cir. 2013) (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). Similarly, "'it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk … for reasons personal to him or because all prisoners in his situation face such a risk.'" *Id.* (*quoting Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Thus, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm *actually* would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge* of a substantial risk of harm." *Gonzales v. Martinez*, 403 F.3d 1179, 1183 (10th Cir. 2005) (*quoting Farmer*, 511 U.S. at 842).

**E. Obviousness of the Substantial Risk of Harm.**

In some situations, courts have reasonably inferred the subjective element of deliberate indifference to a serious need because that need would be obvious to a layperson with no medical training. It takes very little foresight to know that an inmate who has a serious heart condition and who suffered a heart attack a few days earlier should be taken seriously when the inmate complains of chest pains, shortness of breath, or even general malaise. Holding that Defendants were required to respond to that medical need does not impose a duty on them beyond what the law already clearly establishes: prison officials cannot deliberately ignore the obvious

and serious medical needs of those within … their custody. *Havard*, 436 Fed. Appx. at 456; *see also Carr*, 757 Fed. Appx. at 656 (drawing a reasonable inference of a defendant's actual knowledge of a pretrial detainee's serious medical need from the obviousness of the facts showing the need). Here the obviousness of Jonathan Garcia's serious medical needs can be reasonably inferred from the allegations in the complaint that corrections officers in his pod were informed of his medical problems before he died, but after he had already had a heart attack. *See Havard*, 436 Fed. Appx. at 454.

**F.  Willful Blindness to a Substantial Risk of Harm.**

The usual rules that apply in criminal cases with respect to proving a defendant's *mens rea*, or state of mind, also apply to a deliberate indifference claim as well. *See Goebert*, 510 F.3d at 1327. Thus, "'[a] party that willfully blinds itself to a fact … can be charged with constructive knowledge of that fact.'" *Id.* at 1328 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 902 (11th Cir. 2003)). The most obvious method Defendants used to willfully blind themselves to facts was to simply "ignore a request for medical assistance." *Petties*, 836 F.3d at 729. Moreover, the plausible allegation that the corrections officers responsible for setting the policies used to deal with inmates in serious medical distress did not establish policies that were sufficient to get Jonathan Garcia to a hospital days after a heart attack while he was in cardiac distress is, by itself, a justiciable claim of deliberate indifference. Here the Complaint alleges that Defendants knew of and ignored Jonathan Garcia's requests for medical attention conveyed to corrections officers by Jonathan Garcia and others.

An alternative way that Defendants ignored and willfully blinded themselves arises from their own argument that all medical care, including obvious emergencies, were left to the discretion of medical staff. Ignoring a substantial risk of harm to Jonathan Garcia by apparently not alerting

correctional staff of his serious medical condition would not comport with Defendants' obligations to an inmate remanded to Defendant's custody, care, and control. The subjective element of a deliberate indifference claim focuses "on the facts that were known at the time," and whether they "may be a sign of any number of serious, life-threatening conditions." *Id.* Here, Defendants seem to argue that they are immunized from their obligations to an inmate because they have hired contract medical staff. While that medical staff also faces liability in this situation, the lack of care resulting from Defendants' wholesale failure to institute any policy to deal with seriously, chronically ill inmates like Jonathan Garcia cannot operate to prevent Defendants from being responsible for ensuring that Mr. Garcia's conditions of confinement were constitutional. Failure to apprise corrections staff of Jonathan Garcia's medical condition *itself* increased the risk of harm to him. If Defendants' claim of ignorance is to be believed then not only did Defendants ignore Jonathan Garcia's known medical condition, they ignored and blinded themselves to his documented heart attack days before his death.

Another way that Defendants may willfully blind themselves to facts is by harboring a subjective bias or prejudice under which inmates and pretrial detainees are "automatically disbelieved" because they are regarded as not credible, *Goebert*, 510 F.3d at 1328, or prone to exaggerating or faking their symptoms, *see Moulton*, 966 F. Supp. 2d at 1306-07. Like the Defendants in those cases, there are claims in the Complaint (and evidence in the record) here which, when viewed in the light most favorable to Plaintiff, supports a reasonable inference that Defendants exhibited such a subjective bias under which they willfully blinded themselves to the seriousness of Jonathan Garcia's condition, and simply ignored his requests after deciding not to believe him.

**G. Evidence of Systemic Deficiencies**.

Another method of proving the subjective element of a deliberate indifference claim is through "evidence that tends to demonstrate longstanding, systemic deficiencies in the medical care that the jail provided to detainees." *Layton*, 512 Fed. Appx. at 869; *see also Hope v. Pelzer*, 536 U.S. 730, 744-45 (2002) (citing a DOJ report identifying systemic deficiencies in the use of a "hitching post" to punish inmates). Such evidence may consist of reports "identifying grave deficiencies in the medical care provided to detainees" which follow periodic inspections of the jail as a whole, *Layton*, 512 Fed. Appx. at 864, as well as reports concerning the investigation of specific incidents where an inmate died or suffered an adverse outcome at the jail, including a report on the very death at issue in the lawsuit. *Id.* at 865-66. Evidence that recommendations or remedies contained in the reports, such as starting an on-site clinic at the jail, were never implemented before the incident in question also supported a reasonable inference of deliberate indifference on the part of the reports' recipients. *See Id.* at 867. A reasonable jury could conclude that these types of reports put a Defendant "on notice of constitutional deficiencies in the care of seriously ill detainees, and that his failure to take appropriate measures to remedy these deficiencies constituted deliberate indifference." *Id.* at 871-72; *see also Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016) ("The Department of Justice Report, along with the later Agreed Order incorporating the investigation's findings and the 2010 Monitor Report detailing the Jail's progress, provides substantial evidence that Sheriff Dart had notice of the systemic deficiencies in the Jail's health care."); *cf. Tenorio v. Pitzer*, Civ. Nos. 12-01295 & 13-00574, 2017 WL 4271331, at * (D.N.M. Sept. 25, 2017) ("[T]he DOJ's findings that the deficiencies in APD's use-of-force practices are longstanding and systemic" support a reasonable inference that they "consciously disregarded, a substantial risk that its use-of-force practices are resulting in violations of the Fourth

Amendment's limits on the use of deadly force."); *Kindoll v. Southern Health Partners*, Civ. No. 17-84-DLB-CJS, 2019 WL 1409842, at *7, 12 (E.D. Ky. Mar. 28, 2019) (collecting additional authorities). In considering whether Plaintiff's Complaint is subject to dismissal, the Court should consider the implications of the potential of demonstrating Plaintiff's claim.

### V.     Conclusion

A Plaintiff is "merely required to provide a short and plain statement of his Eighth Amendment claims, Fed.R.Civ.P. 8(a), and malice, intent, knowledge, and other condition of mind of a person may be averred generally in the complaint, Fed.R.Civ.P. 9(b). *See Currier v. Doran*, 242 F.3d 905, 916 (10th Cir.2001); *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001)." *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th. Cir. 2006). The facts and allegations set forth in Plaintiff's Complaint expressly satisfy the pleading requirements to show the objective requirement of deliberate indifference on the part of the defendants and the general averment requirement under Fed.R.Civ P. Rule 8(a) for the subjective component of a deliberate indifference claim.

**WHEREFORE** Plaintiff respectfully requests that the Court grant him leave to file the attached proposed First Amended Complaint and deny the Motion to Dismiss or, in the alternative, that the Court simply deny the Motion to Dismiss.

Respectfully Submitted,
**AEQUITAS LAW OF NEW MEXICO, LLC**

**"Electronically Filed"**
/s/ Anna C. Martinez
Attorney for Plaintiff
P.O. Box 25304
Albuquerque, NM 87125
(505) 750-8005
annacmartinezesq@gmail.com

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that a copy of the foregoing has been delivered to all counsel of record via the Court's electronic document filing and delivery service on the date indicated in the Court-affixed header.

**"Electronically Filed"**

/s/ Anna C. Martinez __
Attorney for Plaintiff