IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MARC GRANO as personal representative of the WRONGFUL DEATH ESTATE OF JONATHAN ANDREW GARCIA and a Next Friend to J.O.G., A.S.R., An.J.G and Ar.J.G<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW MEXICO, GREGG MARCANTEL, New Mexico Secretary of Corrections, DAVID JABLONSKI, New Mexico Secretary of Corrections, CLARENCE OLIVAS, Deputy Warden Of Penitentiary of New Mexico, BRIAN LUCERO, Corrections Officer, FNU MARTINEZ, Corrections Officer, FNU BACA, Captain, Corrections Officer, FNU WELLS, Sergeant, Corrections Officer, and JOHN DOES 1 through 5, employees, staff, agents of Penitentiary of New Mexico,<br><br>Defendants. | Case No. 1:20-cv-00147-PJK-KK |

### DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT, DR. MCDONALD

COME NOW, Defendants State of New Mexico, Gregg Marcantel, New Mexico Secretary of Corrections; David Jablonski, New Mexico Secretary of Corrections; Clarence Olivas, Deputy Warden of Penitentiary of New Mexico; Brian Lucero, Corrections Officers; FNU Martinez, Corrections Officer; FNU Baca, Corrections Officer; FNU Wells, Sgt. Corrections Officer; and John Does 1 through 5, employees, staff, agents of Penitentiary of New Mexico, by and through its counsel of record, Garcia Law Group, LLC (Bryan C. Garcia, Meghan S. Nicholson, and Rodney L. Gabaldon) hereby submits its *Motion to Exclude the Opinions and Testimony of Dr. McDonald*, and in support of which states:

## I. Introduction

Plaintiff's economist expert, Dr. McDonald has offered opinions in his report regarding the nature and purpose of hedonic damages and further seeks to place a dollar amount on the Value of Statistical Life ("VSL"). The quantification of the value of human enjoyment of life, whether specific to or just generally applicable to the Decedent, has consistently been excluded from federal courts, a fact of which Dr. McDonald appears well aware despite his attempt to proffer such an opinion. His report includes a lengthy description of New Mexico and Federal case law, however, Dr. McDonald is not a legal expert, and thus his "opinion" on the admissibility of an economist's opinions is inappropriate. Further, his report reveals that the factual support and employed methodology underlying his opinions, or lack thereof, is grossly deficient. Finally, Dr. McDonald's report is hearsay and should also be excluded as such, and his proposed testimony crosses the line to invade the province of this court to instruct the jury on legal definitions and the law, and thus should be excluded as improper.[1]

## II. Legal Authority

Rule 702 of the Federal Rules of Evidence describes four requirements for the admissibility of expert testimony. The rule states that an expert who is qualified may present their opinions if: 1) their specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; 2) their testimony is based on sufficient facts or data; 3) their testimony is the product of reliable principles and methods, and 4) the expert has reliably applied the principles and methods to the facts of this case. The proponent of the expert testimony bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Morales v. E.D. Etnyre & Co.*, 382 F. Supp. 2d 1252, *1266 (D.N.M. 2005).

---

[1] This Motion is filed after the pretrial motion deadline [Doc. 91] and is filed contemporaneously with the corresponding Motion for Leave [Doc. 147] to prevent further delay.

In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case. *See Daubert*, 509 U.S. at 594-95 (1993). The non-exclusive list of factors for a court's consideration includes 1) whether the method has been tested; 2) whether the method has been published and subject to peer review; 3) the error rate; 4) the existence of standards and whether the witness applied them, and 5) whether the witness' method is generally accepted as reliable in the relevant community. *Id*. The court is also to consider whether the conclusions represent an unfounded extrapolation from the data, whether the witness accounted for alternative explanations, whether the opinion was reached for the purpose of litigation, and whether it unduly relies on anecdotal evidence. *See Witherspoon v. Navajo Ref. Co.*, 2005 U.S. Dist. LEXIS 46149, 2005 WL 5988649, at *3 (*citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, (1997).

Expert testimony that is deemed reliable must still be relevant and helpful to the trier of fact. "Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case… The evidence must have a valid scientific connection to the disputed facts in the case." *United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, *1234 (D.N.M. 2012) (quoting *Norris*, 397 F.3d at 884 n. 2). In making this determination, the court should consider, among other factors, the testimony's relevance, the juror's common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of the evidence. *Id*., at 1235. The Supreme Court expanded the rules under *Daubert* to non-scientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. at 141. Here, Dr. McDonald's opinion does not meet these standards.

### III. Argument

While Dr. McDonald's expert report is 10 pages long, it offers only a few biographical facts about the Decedent, no conclusion or summary of his opinions, and appears to contain only

a single identifiable but ultimately inadmissible opinion. The report begins with a discussion of the legal concept of loss of enjoyment of life damages and the value of life damages from the economist's perspective. It then describes the Federal Government's use of VSL data, and the process of conducting VSL research, which ends with Dr. McDonald's opinion that $11.6 million represents a reasonable central value of statistical life in the United States. The second half of the report is Dr. McDonald's legal analysis on the admissibility of his opinions as an expert economist in New Mexico and Federal Court.

Specifically, Dr. McDonald proffers the opinion that, "$11.6 million represents a reasonable central tendency measure of the value of statistical life in the United States…" Exhibit A, Dr. McDonald's Report, p. 6.  Dr. McDonald's opinion placing a "benchmark" value for VSL is inappropriate and has consistently been excluded from Federal Court. Further, as reflected in his report and deposition, Dr. McDonald would have insufficient factual bases to form any other reliable opinions in this case. Dr. McDonald has not attempted to apply any of the present facts here to his theories on VSL, thereby avoiding having to describe or employ any type of methodology in his opinion on hedonic damages. Without a methodology to test or sufficient factual bases in his report, his testimony fails to meet the *Daubert* standard. As his only conclusory opinion consists of only a single, non-specific, and irrelevant "benchmark" figure for VSL, the content of the report and Dr. McDonald's anticipated testimony are inadmissible and should be excluded from trial.

**Despite acknowledging that it is improper, Dr. McDonald's report seeks to place a value on the hedonic damages through the use of value of statistical life research.**

As mentioned, Dr. McDonald's report proffers the opinion that $11.6 million represents an average value for statistical life in the United States. The report proffers this number despite also containing descriptions of the holdings in *Smith v. Ingersoll-Rand Co.* and *Walker v. Spina*. *See*

Exhibit A, Dr. McDonald's Report, p. 8 and 10 (Dr. McDonald describes the holding of *Walker v. Spina* as permitting an economist to describe hedonic damages to the jury, including what factors are relevant in valuing hedonic damages, however, not allowing the economist to quantify the plaintiff's hedonic damages nor provide a benchmark figure for damages) (*citing Walker*, 359 F.Supp 3.d 1054 (D.N.M. 2019)). Indeed, in that case, Judge James O. Browning found that an expert economist was allowed to "generally explain hedonic damages and the factors to consider" but was prohibited from quantifying or providing a benchmark for hedonic damages, and further precluded the expert's report as hearsay. *See Walker v. Spina*, 359 F.Supp 3d 1054, *1060, and 1085 (D.N.M. 2019); *see also Fuller v. Finley Res., Inc.*, 2016 U.S. Dist. LEXIS 49275, 2016 WL 3854053, at *2 (D.N.M. 2016); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, *1245 (10th Cir. 2000) (providing several citations discussing the validity and reliability concerns of economic valuations of human life). Similar to the facts of *Walker v. Spina*, Dr. McDonald bases his hedonic damage figure on the value of statistical lives but does not know what the Decedent's specific lost pleasure of life is. 359 F.Supp 3d 1054, *1062 (D.N.M. 2019). Further, because these VSL valuations are anonymous, they do not reflect the Decedent's loss of enjoyment of life and are not relevant to determining any of the issues before the court.

    Dr. McDonald's report attempts to obfuscate the applicability of his evaluation of the value of statistical life, describing it as not pertaining specifically to the Decedent, but as a general statistic. However, the report is clear that such a value would be generally applicable to the Decedent as a person living in the United States. This would ultimately be the Plaintiffs' intent in proffering such an opinion to the jury, and why "benchmark" figures are routinely excluded. Conversely, if the number of $11.6 million is a benchmark figure and not applicable to the

Decedent's hedonic damages, then such a number is not relevant to the issues before the Court and would only serve to mislead or confuse the jury, and should similarly be excluded.

**The second half of Dr. McDonald's report focusing on the case law surrounding expert economists and their opinions is an inappropriate subject for his expert testimony.**

The second half of Dr. McDonald's report details his analysis of both New Mexico law and Federal law on economic experts and hedonic damages, which he states he does not intend to testify to at trial. Dr. McDonald was clear in his deposition that he does not have any legal training and does not consider himself an expert on these legal issues. *See* Exhibit B, Dr. McDonald's Deposition, 22:5-19 (…but I am not putting myself out there as a legal expert, and I won't testify at trial about any legal issues…). Thus, as these topics are an inappropriate area for economic expert testimony because Dr. McDonald expressly disclaimed any legal opinions and because Dr. McDonald is not qualified, the Court should prohibit him from offering any testimony on his legal analysis of the admissibility of an economist's opinions.

**Dr. McDonald's report fails to meet a single requirement for expert testimony admissibility under of Rule 702 FRE and raises reliability concerns under *Daubert*.**

Dr. McDonald's testimony should be excluded under Rule 702 FRE. Dr. McDonald's specialized knowledge on economics does not aid the jury in understanding or valuing the Decedent's allegedly dispossessed happiness. His testimony at his deposition was clear that he has a scant few biographical facts about the Decedent. *See* Exhibit B, Dr. McDonald's Deposition, 39:17 – 40:13. Dr. McDonald's methodology, essentially likening VSL work in economics and public policy to the legal concept of hedonic damages has been criticized by other economists, including in the work he cites, as discussed below. And finally, Dr. McDonald's testimony seeks to disclaim that any of his principles or methods should be applied directly to Decedent's facts. *Id.*, 41:22 – 42:22 ("…I do not have an opinion for the value-of-life damages for Mr. Garcia.").

When considering the *Frye* holdover and fifth *Daubert* factor, it should be noted Dr. Mcdonald's authority cited for the use of VSL in public policymaking heavily criticizes the use of VSL in personal injury and wrongful death cases. *See* Report, p. 3 (*citing* W. Kip Viscusi, The Flawed Hedonic Damages Measure of Compensation for Wrongful Death and Personal Injury, Journal of Forensic Economics, 20(2)). The conclusion of that paper states, "[b]ut the soundness of these uses of VSL in no way implies that the methodology can be transferred in a straightforward manner to personal injury cases." *Id.*, p. 31. The paper describes that the result of using VSL in compensatory damages, "will be excessive compensation levels from the standpoint of both deterrence and insurance." *Id*. This passage demonstrates that there is controversy in the field of economics regarding Dr. McDonald's plaintiff-biased application of the VSL research and in this vein, Dr. McDonald acknowledges that his work as a legal expert is almost exclusively for plaintiffs. Exhibit B, Dr. McDonald's Deposition, 28:7-20.

Dr. Steinberg's testimony further reveals the inapplicability of an economist's expertise on VSL to the legal concept of hedonic damages. Dr. Steinberg testified, "…economists, you know, focus on looking at where there's actual market transactions, where there's some information in the transaction about how workers or consumers implicitly value their life." Exhibit B, Dr. McDonald's Deposition, 43:12-16. How the free-market or even policymakers value a human life has little to no bearing on how a jury should go about determining the specific value for the loss of the Decedent's enjoyment of life here, as distinct from the other potential damages in this matter.

**Dr. McDonald's report goes beyond the carve-out of admissibility in *Smith* and *Walker* and is improper given his qualifications and testimony.**

Dr. McDonald's report does not explain how he formed his "opinions" as to what constitutes hedonic damages and relevant factors he would relay to the jury, but the citations reveal that similar to the second half of his report, it is Dr. McDonald inappropriately venturing into the

field of legal analysis. *See* Exhibit A, Dr. McDonald's Report. p. 1-2. While Dr. McDonald may well be qualified as an economist to opine on topics such as the lost earning capacity of the Decedent, he has expressly disclaimed any opinion on that topic, and lacks any qualifications to proffer testimony on what his own report describes as the remaining, "non-economic (non-work) aspects of the plaintiff's life." *Id*. In *Walker v. Spina*, the plaintiff there argued that their expert economist had taught and written on "legal-economic topics" such as the value of life, and was thus qualified to opine on hedonic damages. *1063. Here, the same cannot be said for Dr. McDonald.

As described in *Smith v. Ingersoll-Rand Co.*, the Tenth Circuit permits an expert's testimony on the definition of loss of enjoyment of life and what to consider in valuing the loss of enjoyment of life. 214 F.3d 1235, *1245-1246 (10th Cir. 2000)]. The opinion describes the damage category as, "the effect the injury has on the ability to enjoy the occupation of your choice, activities of daily living, social leisure activities, and internal well-being." *Id*., *1245. However, Dr. McDonald does not have any qualifications to describe the legal definitions of these concepts, or the factual basis to describe the particular enjoyment the Decedent had in these social/community concepts.

Even if found to be qualified on "legal-economic" topics, his opinions are still improper. He has an insufficient basis to offer testimony as he has not interviewed family members or examined the Decedent's life in any way to help guide the jury's analysis of these ideas. Further, it appears he has not given any consideration to how the Decedent's circumstances, incarceration, medical issues, or lifestyle may have affected this category of damages. From this, it is clear that Dr. McDonald's opinions would exceed the bounds laid out in *Smith*:

> [defendant] also contends [plaintiff's expert economist's] explanation of hedonic damages constituted impermissible testimony on an ultimate question of law,

> violating our admonition that in no instance can a witness be permitted to define the law of the case. This rule is not, however, a per se bar on any expert testimony which happens to touch on the law; an expert may be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms. Expert testimony on legal issues crosses the line between the permissible and impermissible when it attempts to define the legal parameters within which the jury must exercise its fact-finding function.

*Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, *1246 (10th Cir. 2000) (Internal quotation and citations omitted)

Here, Dr. McDonald's anticipated testimony does not assist the jury in "understanding the facts in evidence…in legal terms" rather, it purely attempts to dictate the legal definition of hedonic damages, the value of the average human life, and which factors the jury must consider in valuing the Decedent's life. Dr. McDonald would offer these opinions without facts or qualifications relating to the "non-economic" aspects of Plaintiff's life or the factors described in the case law.

## IV. Conclusion

Dr. McDonald's report expressly disclaims any opinion on the Decedent's lost earning capacity and seeks to offer testimony on the legal definition of value of life damages and the average VSL value of $11.6 million. The valuation of life, specific or as a benchmark, is consistently excluded in federal court. As Dr. McDonald's opinion on what constitutes hedonic damages offers no reliable factual bases or underlying methodology, does not aid the jury in understanding any of the facts in evidence, and only seeks to dictate the definition and valuation of hedonic damages for the jury, his testimony has crossed the threshold described in *Smith*. Thus, Dr. McDonald's opinions should be excluded. The jury should be permitted to understand and calculate hedonic damages, as is their responsibility to do. Finally, should the jury require guidance on the factors to consider or the definition of hedonic damages as a legal concept, a jury instruction would be a more appropriate method than expert testimony.

For the reasons set forth above, Defendants ask this Court to exclude Dr. McDonald's testimony and report in whole, or in the alternative, to exclude at a minimum any opinions or trial testimony by Dr. McDonald that attempts to quantify the value of human life or enjoyment of life, or that dictates the applicable definitions on legal concepts including hedonic damages.

Respectfully submitted:

**GARCIA LAW GROUP, LLC**
*/s/ Rodney Gabaldon*
MEGHAN S. NICHOLSON
RODNEY L. GABALDON
BRYAN C. GARCIA
*Attorneys for Defendants*
6739 Academy Road NE, Suite 200
Albuquerque, NM 87109
(505) 629-1576 / (505) 652-1337 (fax)
rgabaldon@garcialawgroupllc.com
bgarcia@garcialawgroupllc.com
mnicholson@garcialawgroupllc.com

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on the 15th day of June, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system and has been served on Plaintiff, pursuant to Federal Rules of Civil Procedure as follows:

Joseph M. Romero
JOSEPH M. ROMERO LAW, LLC
P.O. Box 27579
Albuquerque, NM 87125
Tel: (505) 433-1642
E-mail: joe@romerolawnm.com
*Attorney for Plaintiff*

Anna C. Martinez
AEQUITAS LAW OF NEW MEXICO, LLC
P.O. Box 25304
Albuquerque, NM 8725
E-mail: annacmartinezesq@gmail.com
*Attorney for Plaintiff*


BY: *//s// Rodney Gabaldón*
Rodney Gabaldón