IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MARC GRANO as personal representative of the WRONGFUL DEATH ESTATE OF JONATHAN ANDREW GARCIA and a Next Friend to J.O.G., A.S.R., An.J.G and Ar.J.G<br><br>     **Plaintiff,**<br><br>v.<br><br>STATE OF NEW MEXICO, GREGG MARCANTEL, New Mexico Secretary of Corrections, DAVID JABLONSKI, New Mexico Secretary of Corrections, CLARENCE OLIVAS, Deputy Warden Of Penitentiary of New Mexico, BRIAN LUCERO, Corrections Officer, FNU MARTINEZ, Corrections Officer, FNU BACA, Captain, Corrections Officer, FNU WELLS, Sergeant, Corrections Officer, and JOHN DOES 1 through 5, employees, staff, agents of Penitentiary of New Mexico,<br><br>     **Defendants.** | Case No. 1:20-cv-00147-PJK-KK |

## DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT, DR. STEINBERG

COME NOW, Defendants State of New Mexico, Gregg Marcantel, New Mexico Secretary of Corrections; David Jablonski, New Mexico Secretary of Corrections; Clarence Olivas, Deputy Warden of Penitentiary of New Mexico; Brian Lucero, Corrections Officers; FNU Martinez, Corrections Officer; FNU Baca, Corrections Officer; FNU Wells, Sgt. Corrections Officer; and John Does 1 through 5, employees, staff, agents of Penitentiary of New Mexico, by and through its counsel of record, Garcia Law Group, LLC (Bryan C. Garcia, Meghan S. Nicholson, and Rodney L. Gabaldon) hereby submits its *Motion to Exclude the Opinions and Testimony of Dr. Steinberg*, and in support of which states:

## I. Introduction

Plaintiff's Expert cardiologist, Dr. Alon Steinberg produced an expert report summarizing his opinions dated February 4th, 2022 which is attached here as Exhibit A. Dr. Steinberg's report can be summarized as offering two conclusions: 1) the Decedent had a "STEMI" heart attack on the morning February 20, 2017, which was an emergency and he should have been transported immediately in an ambulance, and 2) the Decedent was complaining of chest pain and should have been sent to the emergency room in the days preceding February 20, 2017. Dr. Steinberg opines that had either of these actions been taken, there is a high probability that Decedent would have survived. None of the individually named Defendants serve as a medical professional for NMCD. Dr. Steinberg offers no opinion regarding the standard of care for the individually named NMCD employee Defendants. Therefore his opinions will not assist the jury in understanding the facts.[1]

## II. Legal Authority

Under *Daubert*[2], the district court must ensure that expert testimony rests on a reliable foundation and is relevant to the task at hand. *United States v. Baines*, 573 F.3d 979, *985 (10th Cir. 2009). Expert testimony is only admissible if it satisfies the following four conjunctive factors: 1) it is helpful to the jury, 2) based on sufficient facts and data, 3) testimony is the product of reliable principles and methods, and 4) the witness has applied the principles and methods reliably. *Id.* (citing FRE 702). The burden of proof is on the proponent of the expert testimony. *Id.* The district court may then consider the *Daubert* factors to the extent relevant. *Id.*, *985-986.

---

[1] This Motion is filed after the pretrial motion deadline [Doc. 91] and is filed contemporaneously with the corresponding Motion for Leave [Doc. 147] to prevent further delay.
[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The court must also consider whether an expert witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence. *See Walker v. Spina*, 359 F. Supp. 3d 1054, *1070 (D.N.M. 2019) (citations omitted). To accomplish this, "a district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Id*., (quoting *Daubert*, 509 U.S. at 592). In determining "whether the reasoning or methodology underlying the testimony is scientifically valid…" *Id*., (quoting *Daubert*, 509 U.S. at 592-93). Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand." *Id.*, (quoting *Daubert*, 509 U.S. at 597). Findings of unwarranted extrapolations, presumptions, failure to account for alternative explanations, and a report prepared solely for litigation leads to a finding that the expert testimony would not be helpful to a trier of fact and it should be excluded. *See Witherspoon v. Navajo Ref. Co.*, 2005 U.S. Dist. LEXIS 46149, *11 (D.N.M. 2005) (citing *Daubert*, 509 U.S. 594-95; *Joiner*, 522 U.S. 136, 146).

### IV. Argument

**Dr. Steinberg's opinions regarding the alleged failures of non-Defendant individuals do not assist the jury in determining the outcome of this matter.**

Dr. Steinberg's opinions will not meet the requirement that they assist the trial of fact to decide the issues in this matter. Dr. Steinberg's deposition testimony confirms that his opinions are only focused on the medical personnel's clinical decisions making, and do not take issue, address, or concern the conduct of any of the named Defendants. *See* Exhibit B, Deposition, 16:10 – 18:5, 68:10-21, 72:18-25, 88:20 - 89:11; *see also* Exhibit A, Dr.

Steinberg's Report. It is undisputed that the decision to order a non-emergent transport on the morning of February 20, 2017, was not made by any of the named Defendants. *See* Exhibit C, Medical Transport Request; *see also* Exhibit A, Dr. Steinberg's Report, p. 2 (" [a]t 6:57am, a transport vehicle was ordered by Dr. Andrade. The medical transport security request stated that a medical-non-emergency/urgent Corrections Department vehicle to be used instead of Medical-Emergency Ambulance Transport."). Moreover, the decision of whether to send the Decedent to the emergency room in the preceding days would not have been made by any of the named correctional employees, but rather would have also been made by the independent contractor medical staff.

Here, Plaintiff is bringing claims against the State of New Mexico and various NMCD staff, but does not name any of the private contract medical staff nor does he allege that any of the named Defendants are healthcare providers. Dr. Steinberg's opinion that the medical staff failed to send the Decedent to Christus Saint Vincent via ambulance will not assist the jury in deciding whether the NMCD employee-Defendants acted with deliberate indifference to Decedent's medical needs.

Plaintiff bears the burden of proving the objective and subjective prongs of a deliberate indifference claim against the individually named Defendants, which do not include the independent medical personnel.[3] Under the objective inquiry, "a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1028-1030

---

[3] Dr. Steinberg's testimony similarly will not help the jury decide the claims against the State of New Mexico for failing to train, supervise, and protect, as Dr. Steinberg has made clear he has no opinions about the abilities or knowledge of the correctional officers. *See* Exhibit B, Dr. Steinberg's Deposition, 62:10-23, 73:16 – 74:4, 88:20 - 89:11. Likewise, he had no opinions supporting the allegation that PNM had insufficient providers in the MRU, as Dr. Steinberg testified he was unaware of the number of providers or the capabilities of the MRU. *Id.*, 29:7 – 30:21.

(10th Cir. 2020) (citations omitted). Dr. Steinberg's report and testimony lack any indication that the type and degree of Mr. Garcia's chest pain was obvious to a lay person.

The subjective inquiry component asks both whether the defendant-official was aware of the facts from which the inference of a substantial risk of serious harm exists, and they must also draw the inference. *Id.*, (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). The risks must be obvious to the so-called "reasonable man." *Id.*, (citations ommitted). Dr. Steinberg's own report acknowledges that Defendants escorted Mr. Garcia to medical within four minutes of his complaints of chest pain on February 20, 2017.

Dr. Steinberg's opinions address neither of these components for claims against the NMCD employee-Defendants, and his testimony shows he would be unable to proffer relevant, admissible opinions regarding the allegations of deliberate indifference by Defendants at trial. *See* Exhibit B, Dr. Steinberg's Deposition, 16:10 – 18:5, 71:19-25; 72:18-25. Thus, given that Dr. Steinberg's opinions are limited to medical knowledge, his testimony would be unhelpful, improper, and serve only to obfuscate the issues and proper layman analysis before the jury. *See Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1028-1030 (10th Cir. 2020); *see also United States v. Lawson*, Nos. 91-5189, 92-5020, 1993 U.S. App. LEXIS 8019, *10-12 (10th Cir. 1993).

Further, Dr. Steinberg agrees that the Defendant correctional officers' response to the Decedent's first documented complaints of chest pain was reasonable. *See* Exhibit B, Dr. Steinberg's Deposition, 57:14 -59:22. This is not a medical negligence matter. Dr. Steinberg's opinions on what medical care would or would not have saved the Decedent's life are irrelevant to what the NMCD Defendants should have done, and this testimony appears to be intended to prejudice the jury against the Defendants who ultimately had no

role in the decision to order non-emergency transport. Thus, the proposed expert testimony should be prohibited under Rules 702(a) and 403 FRE, and because it would only cause confusion to the jury. *See Tanberg v. Sholtis*, 401 F.3d 1151, *1164-1165 (10th Cir. 2005).

**There is an insufficient factual basis of support for Dr. Steinberg's opinion that sending Mr. Garcia to the hospital in the days before February 20, 2017, would have saved his life, and his methodology in arriving at his conclusion is unreliable.**

Dr. Steinberg's second opinion regarding the likelihood of the Decedent having a better medical outcome had he been transported in the days preceding February 20, 2017 is unreliable because it is speculation and based on insufficient facts. This opinion was originally set forth in Dr. Steinberg's February 4, 2022 report and was based solely on the hearsay reports from the Decedent's mother that Mr. Garcia was experiencing chest pain, shortness of breath, and fatigue on the evening of February 19, 2017. *See* Exhibit A, Dr. Steinberg's Report, p. 1 (identifying the items reviewed to form his opinion listing Marcella Garcia's Answer to Defendants' Interrogatory Nos. 7 and 8); *see also* Exhibit B, Dr. Steinberg's Deposition, 57:3-8. After memorializing his opinions in the February 4, 2022 report, Dr. Steinberg testified an additional basis for that opinion, specifically: Decedent received a prescription for nitroglycerine on February 7th and had an EKG dated February 10th. *See* Exhibit B, Dr. Steinberg's Deposition, 7:4 - 9:24.

Dr. Steinberg testified that the prescription and the February 10th EKG, along with the brief description of symptoms by Marcella Garcia, were the only bases for his opinion that prior intervention would have saved Decedent's life.[4] These bases are insufficient to support his second opinion. However, Dr. Steinberg also testified that he was uncertain of when the EKG dated February 10th was actually *performed*, and that it may have even been

---

[4] While Dr. Steinberg's report offers an adequate explanation of the advantages an ambulance provides to a patient experiencing a STEMI heart attack, it does not provide any explanation of the basis for his second opinion regarding the advantages of care in the days prior.

taken on the day of the Decedent's death. *See* Exhibit B, Dr. Steinberg's Deposition, 47:22 – 48:6.

The testimony from Dr. Steinberg's deposition clearly demonstrates the lack of factual basis for his opinions, their inapplicability to the Defendants, and the unreliable methodology employed by Dr. Steinberg. Dr. Steinberg appears to concede that he has an insufficient factual basis for his opinions when asked about his point of view on this case at his deposition testimony stating"

> …there is a lot of assumptions in this case. Because I don't know what – what really happened. There's been – there's no – usually when I review a case sometimes there's more medical records, there's interviews from a physician, the nurse. Either interviews [or] depositions from some of the correctional officers there involved in the case and – to see what exactly happened. And so because of kind of scant documentation, **I'm sometimes guessing, you know, more or less what happened** based on – on the available medical records. So I'm unaware about how much the correctional officers were aware of what's going on.

Exhibit B, Dr. Steinberg's Deposition, 12:7-20 (emphasis added).

Later in his deposition, Dr. Steinberg again testified, "…it's just there's – there's so much lack of data for me that I – I've never – **I'm just guessing** so much about what exactly happened… So I'm just – I'm just disclosing that." Exhibit B, Dr. Steinberg's Deposition 60:16-21 (emphasis added). Clearly, Dr. Steinberg has his own concerns about his methodology that he felt compelled to disclose them during his deposition.

It appears that the only conduct by any of the Defendants of which Dr. Steinberg is even aware is that Defendants Lucero and Wells drove Mr. Garcia to the hospital on February 20, 2017. *See* Exhibit B, Dr. Steinberg's Deposition, 16:10 – 17:25. This factual foundation for Dr. Steinberg's opinions as applied against the Defendants actually named in this matter raises all four concerns for unreliable opinions described in *Walker v. Spina*. 359 F. Supp. 3d 1054, *1070 (D.N.M. 2019); *see also United States v. Deleon*, 2021 U.S. Dist. LEXIS

174083, *53 (D.N.M. 2021).[5] Again, Dr. Steinberg has opined that the Decedent had a "very high probability of survival" had his chest pain been addressed in the ER in the days preceding February 20, 2017. *See* Exhibit A, Dr. Steinberg's Report, p. 5. It is unclear how Dr. Steinberg is able to form such an opinion when he readily admits he is unaware of how many providers or what types of care are available within the MRU to inmates at PNM. Exhibit B, Dr. Steinberg's Deposition, 29:7-24; 30:17-21. Further, Dr. Steinberg's report does not go on to explain what treatments, presumably only available at an ER, were necessary to save the Decedent in the days before February 20, 2017.

The unfounded extrapolations in Dr. Steinberg's report are based solely upon two treatments being ordered sometime in the weeks before Decedent's death, and hearsay that Mr. Garcia told Marcella Garcia he was having chest pains the day before he died. Dr. Steinberg's opinions regarding the Decedent's health in the days preceding February 20, 2017, do not have a sufficient factual basis or a reliable methodology, and the Court should exclude the unreliable opinion as the gatekeeper under the applicable *Daubert* standards. *See United States v. Baines*, 573 F.3d 979, *985 (10th Cir. 2009).

**Alternatively, Dr. Steinberg's expert opinions should be limited to the areas of a cardiologist's medical decision-making, and any testimony regarding the NMCD-employee's standard of care should not be allowed.**

The Court should preclude Dr. Steinberg from commenting on the correctional facility or correctional officers' conduct, or their applicable standard of care. Dr. Steinberg Curriculum Vitae details his professional experience including over 30 years of medical training and practice, but lacks any experience with corrections medicine. His deposition

---

[5] Problematic foundations for an expert's opinions include: 1) when a conclusion represents an "unfounded extrapolation" from the data; 2) whether the witness has not adequately accounted for alternative explanations for the effect at issue; 3) whether the opinion was reached for the purposes of litigation or as the result of independent studies; and 4) whether it unduly relies on anecdotal evidence.

testimony also confirms that he has no experience in the correctional facility setting, and he is only seeking to offer opinions from the point of view of a cardiologist. *See* Exhibit B, Dr. Steinberg's Deposition, 11:7-13, 13:4-14.

While Dr. Steinberg's qualifications are sufficient to provide expert testimony regarding Decedent's heart issues, his opinions should not be permitted to extend beyond that realm of medical expertise into the standards for correctional facilities and their employees or even corrections medicine. For example, when the Court is analyzing the Defendant correctional officers' responses to the alleged symptoms, a layman analysis must be applied as they are not trained medical personnel. *See Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1028-1030 (10th Cir. 2020) ("a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").[6] Dr. Steinberg should not be permitted to opine as to what he believes would have been obvious to the reasonable layman, as such considerations should be left to the jury and could be tainted by Dr. Steinberg's considerable medical knowledge.

## V. Conclusion

Dr. Steinberg's first opinion regarding the allegedly improper and delayed mode of transportation by non-parties does not assist the trier of fact in determining the issues before the Court. Dr. Steinberg's second opinion regarding the Decedent's complaints of chest pain, and the likelihood of his survival had he been taken to the ER prior to February 20, 2017, has an insufficient factual basis to be reliable at trial. Finally, Dr. Steinberg's deposition testimony reveals that his methodology employed in forming his opinions includes a

---

[6] Here, no failures to perform physician mandated treatment have been identified or opined upon, thus Plaintiff's claim must fit within the obvious to the so-called obvious to the reasonable man standard. *Id.*

significant amount of "guessing" about what really happened. Thus, his opinions, testimony, and report should be excluded from trial. Alternatively, should Dr. Steinberg be permitted to present his opinions to the jury, his testimony must be cabined to the expertise of a cardiologist and kept out of the realm of correctional facility standards, medicine, and critiques of the responses by corrections staff.

Respectfully submitted:

**GARCIA LAW GROUP, LLC**

*/s/ Rodney Gabaldon*
MEGHAN S. NICHOLSON
RODNEY L. GABALDON
BRYAN C. GARCIA
*Attorneys for Defendants*
6739 Academy Road NE, Suite 200
Albuquerque, NM 87109
(505) 629-1576 / (505) 652-1337 (fax)
rgabaldon@garcialawgroupllc.com
bgarcia@garcialawgroupllc.com
mnicholson@garcialawgroupllc.com

**CERTIFICATE OF SERVICE**

       I, the undersigned, hereby certify that on the 15th day of June, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system and has been served on Plaintiff, pursuant to Federal Rules of Civil Procedure as follows:

Joseph M. Romero
JOSEPH M. ROMERO LAW, LLC
P.O. Box 27579
Albuquerque, NM 87125
Tel: (505) 433-1642
E-mail: joe@romerolawnm.com
*Attorney for Plaintiff*

Anna C. Martinez
AEQUITAS LAW OF NEW MEXICO, LLC
P.O. Box 25304
Albuquerque, NM 8725
E-mail: annacmartinezesq@gmail.com
*Attorney for Plaintiff*


BY: *//s// Rodney Gabaldón*
Rodney Gabaldón